[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. St. Clair Twp. Bd. of Trustees v. Hamilton,* Slip Opinion No. 2019-Ohio-717.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-717

THE STATE EX REL. ST. CLAIR TOWNSHIP BOARD OF TRUSTEES ET AL. *v.* THE CITY OF HAMILTON ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. St. Clair Twp. Bd. of Trustees v. Hamilton,* Slip Opinion No. 2019-Ohio-717.]

*Mandamus—Writ sought to compel city to pay township for lost tax revenue associated with township territory annexed to city—R.C. 709.19— Township has failed to establish amount city owes—Writ denied.*

(No. 2017-0563—Submitted January 8, 2019—Decided March 5, 2019.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this original action, relators, the St. Clair Township Board of Trustees and Trustees Tom Barnes, John R. Snyder, and Judy Valerio (collectively, "St. Clair"), have filed a complaint for a writ of mandamus compelling respondents, the city of Hamilton ("the city"), City Manager Joshua Smith, and City Finance Director David C. Jones (collectively, "Hamilton"), to calculate (or cause to be

calculated) and pay lost tax revenue associated with territory that was annexed to the city before March 27, 2002, but not excluded from the township until 2016.[1] For the reasons that follow, we deny the writ.

## LEGAL BACKGROUND

{¶ 2} St. Clair Township is a "body politic and corporate, for the purpose of enjoying and exercising the rights and privileges conferred upon it by law," R.C. 503.01; *see also* Ohio Constitution, Article X, Section 1. The city of Hamilton is a municipal corporation. *See* Ohio Constitution, Article XVIII, Section 1; R.C. 703.01(A).

{¶ 3} "Territory may be annexed to, merged with, or detached from, municipal corporations" as provided by law. R.C. 709.01. "Annexation" is a "formal act" by which a municipal corporation "incorporates land within its dominion." *Black's Law Dictionary* 108 (10th Ed.2014). We have "observed that 'it is the policy of the state of Ohio to encourage annexation by municipalities of adjacent territory.' " *Sugarcreek Twp. v. Centerville*, 133 Ohio St.3d 467, 2012-Ohio-4649, 979 N.E.2d 261, ¶ 3, quoting *Middletown v. McGee*, 39 Ohio St.3d 284, 285, 530 N.E.2d 902 (1988).

{¶ 4} Before March 27, 2002, a municipal corporation bore a responsibility under specified circumstances to pay a township for lost tax revenue associated with the municipality's "annexation of territory of any township." Former R.C. 709.19(B) through (D), Am.H.B. No. 19, 139 Ohio Laws, Part I, 1422-1424. Although the amount a municipality had a duty to pay varied according to the

---

1. Jones's predecessor, Thomas Vanderhorst, was named in his official capacity as a party when this case was originally filed. Because Jones succeeded to Vanderhorst's position while this case was pending, Jones "is automatically substituted as a party," S.Ct.Prac.R. 4.06(B), for Vanderhorst.

For similar reasons, we deny as moot St. Clair's motion to substitute Snyder in place of Gary R. Couch, who was Snyder's predecessor. When this case was originally filed, Couch was named as a party in his official capacity. Because Snyder succeeded to Couch's position while this case was pending, Snyder "is automatically substituted as a party," *id.*, for Couch.

circumstances, the salient point here is that the municipality's duty to pay ripened at the time of *annexation*. *Id.*

{¶ 5} The timing of the duty changed when the General Assembly enacted Am.Sub.S.B. No. 5, 149 Ohio Laws, Part I, 621 ("S.B. 5"), which was effective March 27, 2002. Under S.B. 5, a municipality's duty to make lost-tax-revenue payments to a township no longer turned solely on the municipality's *annexation* of township territory. Instead, R.C. 709.19(B) as amended by S.B. 5 provided:

> If unincorporated territory is annexed to a municipal corporation and excluded from a township under section 503.07 of the Revised Code, upon exclusion of that territory, the municipal corporation that annexed the territory shall make payments to the township from which the territory was annexed only as provided in this section * * *.

In other words, the S.B. 5 version of R.C. 709.19(B) directed a municipality to pay a township but only when territory had been *annexed and excluded* as prescribed by R.C. 503.07, with the payments commencing upon exclusion.

{¶ 6} As set forth in R.C. 503.07, a municipality "may petition the board of county commissioners for a change of township lines in order to make them identical, in whole or in part, with the" municipality's limits. Or the municipality may petition the board of commissioners "to erect a new township out of the portion of such township included within the" municipality's limits. *Id.* When a municipality's limits "become identical with those of a township, all township offices shall be abolished, and the duties thereof shall be performed by the corresponding officers of the" municipality. R.C. 703.22.

{¶ 7} Uncodified language contained in Section 3 of S.B. 5 addressed the class of annexation petitions to which S.B. 5 would apply:

The provisions of Section 1 of this act shall apply only to annexation petitions filed on or after the effective date of this act. All annexation petitions filed before the effective date of this act shall be processed under the provisions of Chapter 709. of the Revised Code in effect at the time a particular petition was filed.

{¶ 8} Effective August 5, 2016, the General Assembly repealed the S.B. 5 version of R.C. 709.19. *See* 2016 Am.Sub.H.B. No. 233 ("H.B. 233"), Section 2. At the same time, H.B. 233 enacted an amended version of R.C. 709.19 that accounted for R.C. 5709.45's creation of downtown-redevelopment-and-innovation districts. H.B. 233 at Section 1. H.B. 233 did not, however, expressly reenact the uncodified language in Section 3 of S.B. 5. Aside from the reference to R.C. 5709.45, the S.B. 5 and H.B. 233 versions of R.C. 709.19 are identical. The H.B. 233 version of R.C. 709.19 is the current version of the statute.

## FACTUAL BACKGROUND

{¶ 9} The city of Hamilton, which is located in Butler County, has, over time, annexed territory from four townships: Fairfield, Hanover, Ross, and St. Clair. Historically, after annexation, the Butler County auditor assigned the newly annexed parcels to a taxing district in the city that did not include the township from which the territory was annexed. As a result, owners of real property located within the city did not pay real-property taxes to any township and there was no township taxing district, township tax rate, or township tax assessment on any real property located within the city.

{¶ 10} In the spring of 2016, St. Clair Township's counsel contacted the county auditor to inquire whether the township should be receiving an allocation of

inside millage each year for its territory that had been annexed by the city.[2] According to a deputy auditor, counsel's inquiry was worth investigating. Following an investigation, it was determined that an adjustment to the township's boundaries might provide a means to resolve the issue.

{¶ 11} In September 2016, the city's then finance director informed city council via staff report that the city had, over an unspecified period of time, "annexed property from four surrounding townships" but that "[n]o documentation ha[d] been located indicating that the City ha[d] ever filed a subsequent petition with the county commissioners to remove annexed territory from a township after annexations were complete[]."  Continuing, the report explained that "[f]ailure to remove the territory from a township following annexation results in the property being located in joint or overlapping jurisdictions—both in the City and in the township following annexation;" however, the county had been treating the "annexations themselves as automatically removing the annexed territory from a township, leaving it solely in the City of Hamilton for both voting and tax purposes."

{¶ 12} The report noted St. Clair Township's claims that it was entitled to an allocation of inside millage based on the auditor's automatic removal of township territory following annexation.  To remedy the issue, the report recommended that city council grant authority for a petition to be filed with the Butler County Board of Commissioners requesting that a new township—Hamilton Township—be created out of the previously annexed territory from Fairfield, Hanover, Ross, and St. Clair Townships.  Hamilton Township would exist solely

---

2. "[M]illage is the rate that is multiplied by the taxable value to arrive at the amount of tax owed, subject to some further adjustments." *Sanborn v. Hamilton Cty. Budget Comm.*, 142 Ohio St.3d 20, 2014-Ohio-5218, 27 N.E.3d 498, ¶ 6, fn. 1.  "Inside millage" refers to the millage that may be imposed without voter approval under the authority of Article XII, Section 2 of the Ohio Constitution. *Id.* at ¶ 5-7.

within the city's boundaries as a so-called "paper township"[3] and thus have no duties or entitlements to taxes. The report posited that the creation of the township would "straighten up any inaccuracies of the Butler County Auditor in failing to properly attribute taxes" associated with the annexed territory.

{¶ 13} City council followed the report's recommendation and adopted an emergency ordinance authorizing the submission of a petition to the board of county commissioners seeking the creation of Hamilton Township. The new township would conform to the city's boundaries and consist of parts of the four townships that the city annexed before the effective date of S.B. 5. The city manager then filed the petition with the board of county commissioners, along with a list of parcel numbers that would constitute Hamilton Township. In October 2016, about two months after the current version of R.C. 709.19 took effect, the board of county commissioners approved the petition under the authority granted by R.C. 503.07. The board of county commissioners' resolution reaffirmed that its actions applied to those "portions of St. Clair Township, Fairfield Township, Hanover Township, and Ross Township which are presently, and which were prior to March 27, 2002, included within the corporate limits of the City of Hamilton."

{¶ 14} Following the petition's approval, St. Clair sought lost-tax-revenue payments from the city. After the city refused to pay, St. Clair filed this original action seeking a writ of mandamus. St. Clair seeks, for tax year 2016 and successive tax years thereafter prescribed by current R.C. 709.19, to compel Hamilton to calculate (or cause to be calculated) and pay the amount of lost tax revenue associated with the exclusion of the territory from the township.

---

3. *See* 1990 Ohio Atty.Gen.Ops. No. 90-071, 1990 WL 546981, *2 (a "paper township" is a township whose limits are "identical to those of a municipal corporation" and whose "offices are abolished pursuant to R.C. 703.22").

**{¶ 15}** While this case was pending, we denied St. Clair's motion for a peremptory writ and request to appoint a master commissioner.[4] 153 Ohio St.3d 1427, 2018-Ohio-2418, 100 N.E.3d 444. We also denied Hamilton's motion to dismiss. *Id.* We instead issued an alternative writ directing the parties to file evidence and briefs. *Id.* The parties have submitted their evidence, and the matter is fully briefed.

## ANALYSIS

### *The mandamus standard*

**{¶ 16}** For a writ of mandamus to issue, St. Clair must show with clear and convincing evidence that (1) Hamilton has a clear legal duty to provide the requested relief, (2) St. Clair has a clear legal right to receive it, and (3) St. Clair lacks an adequate remedy in the ordinary course of the law. *State ex rel. Love v. O'Donnell*, 150 Ohio St.3d 378, 2017-Ohio-5659, 81 N.E.3d 1250, ¶ 3. Under the clear-and-convincing-evidence standard, St. Clair bears the burden to offer " 'proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will' " lead the fact-finder to " 'a firm belief or conviction as to the facts sought to be established.' " *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 18, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

### *Clear legal duty*

**{¶ 17}** St. Clair grounds its assertion that it is entitled to relief in mandamus on the current version of R.C. 709.19. According to St. Clair, that version requires

---

4. In its merit brief, St. Clair renews its request to have a master commissioner appointed. Citing to what it regards as the case's "scope, size, and complexity," St. Clair claims a master commissioner's assistance is necessary to help calculate "the precise dollars amount to which Relators are entitled." We deny the request because " '[m]andamus is not well adapted to the trial of questions of fact * * *.' " (Brackets and ellipsis sic.) *State ex rel. Manley v. Walsh*, 142 Ohio St.3d 384, 2014-Ohio-4563, 31 N.E.3d 608, ¶ 27, quoting *State ex rel. Bross v. Carpenter*, 51 Ohio St. 83, 89, 37 N.E. 261 (1894). St. Clair's request for costs is also denied.

the fulfilment of two conditions to trigger the payment of taxes from a municipality to a township: (1) annexation of township territory by a municipality and (2) exclusion of that territory pursuant to R.C. 503.07. Given that the parties agree that the city annexed and excluded territory from St. Clair Township, St. Clair maintains that Hamilton acquired a duty to pay "upon exclusion of that territory," under current R.C. 709.19(B). Hamilton counters that S.B. 5 Section 3's uncodified language requires that the pre-S.B. 5 version of R.C. 709.19 be applied. Because that version of R.C. 709.19 did not condition a municipality's duty to pay on the exclusion of territory from the township, Hamilton argues that it did not acquire a duty to pay when the county board of commissioners approved its petition to exclude the territory.

{¶ 18} As recounted earlier, Section 3 of S.B. 5 provided that S.B. 5's provisions "apply only to annexation petitions filed on or after the effective date of [S.B. 5]." Section 3 went on to provide that an annexation petition filed before S.B. 5's effective date would be subject to R.C. Chapter 709 as it existed as of the petition's filing. Uncodified law, such as Section 3, does not receive an Ohio Revised Code section number, because it is not of a general and permanent nature— nevertheless, it is binding law. *Maynard v. Eaton Corp.*, 119 Ohio St.3d 443, 2008-Ohio-4542, 895 N.E.2d 145, ¶ 7. The annexations at issue in this case all took place before S.B. 5 took effect. Therefore, one might preliminarily conclude that the version of R.C. 709.19 in effect before S.B. 5 governs here based on H.B. 5 Section 3's directive. But recall that H.B. 233, which took effect *before* the board of county commissioners approved the city's petition to adjust the townships' boundaries, repealed the S.B. 5 version of R.C. 709.19 and replaced it with an amended, albeit virtually identical, version (i.e., the current version of R.C. 709.19).[5] In addition, H.B. 233 did not expressly reenact the uncodified language of S.B. 5 Section 3.

---

5. St. Clair elsewhere claims that the board of county commissioners' approval of the petition requesting the creation of Hamilton Township "arguably" violated R.C. 503.04 and 503.08. The

**{¶ 19}** The absence of Section 3's uncodified language from H.B. 233 raises the question whether the uncodified language still applies. The answer may be found in S.B. 5 Section 3 itself. It contains a directive about how to apply "[t]he provisions of * * * this act [S.B. 5]." The current version of R.C. 709.19, which took effect before the city's petition to adjust the townships' boundaries was approved, is not a provision that arose out of "this act [S.B. 5]." Thus, S.B. 5 Section 3's directive is an instruction about how to apply the S.B. 5 version of R.C. 709.19, which is not relevant in this case. In other words, the current version of R.C. 709.19 applies here.

**{¶ 20}** Hamilton counters that requiring it to pay St. Clair Township under the current version of R.C. 709.19(B) would unfairly benefit St. Clair Township because, Hamilton asserts, St. Clair Township has already received payments under the pre-S.B. 5 version of R.C. 709.19(B). Hamilton's assertion is, on this record, unverifiable. Further, Hamilton's overpayment argument falters because it invites us to probe the wisdom of the payment scheme embodied in the current version of R.C. 709.19. "It is not this court's role to establish legislative policies or to second-guess the General Assembly's policy choices." *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 212.

---

former provides that "[n]o two townships in any county shall be incorporated by the same name," and the latter provides that "[n]o two townships in any county shall have the same name." As evidence of the alleged violations, St. Clair adverts to handwritten minutes from an 1867 board of county commissioners' meeting that refer to another Hamilton Township. St. Clair's purpose in pointing this out is not clear. It does not ask us to void the board of county commissioners' approval of the petition, and it does not allege harm from the "arguabl[e]" statutory violation—indeed, approval of the petition creates the basis for St. Clair's request for relief. Further, we do not have the benefit of the board of county commissioners' view on this issue, because the board is not a party to this action. And the deputy county auditor stated in deposition that "the term Hamilton Township was removed from our records somewhere along the line, [but that] it's difficult to say when." Given these factors, we do not address St. Clair's allegations and instead presume the regularity of the board of county commissioners' actions. *See Gaston v. Medina Cty. Bd. of Revision*, 133 Ohio St.3d 18, 2012-Ohio-3872, 975 N.E.2d 941, ¶ 16.

**{¶ 21}** Hamilton next contends that applying the current version of R.C. 709.19 to the facts of this case would violate the prohibition against retroactive legislation. *See* Ohio Constitution, Article II, Section 28 ("The general assembly shall have no power to pass retroactive laws * * *"). Hamilton is mistaken. Under the current version of R.C. 709.19, a municipality's duty to make lost-tax-revenue payments ripens when township territory is annexed and excluded, with the payments commencing upon exclusion. In this case, Hamilton's duty to pay St. Clair Township ripened two months *after* H.B. 233 took effect. Applying a statute to events occurring after the statute's passage constitutes a prospective, not a retroactive, application of law.

**{¶ 22}** Lastly, Hamilton argues that no compensation is due unless township territory is excluded within 12 years of its annexation. Because the exclusion of St. Clair Township's territory took place more than 12 years after annexation, says Hamilton, no compensation is due. This argument builds off the repayment schedules set forth in the current version of R.C. 709.19. These schedules provide that "[i]n the first through third years following the annexation and exclusion of the territory from the township," the municipality must pay "eighty per cent of the township taxes in the annexed territory that would have been due the township for" specified classes of "property taxes if no annexation had occurred." R.C. 709.19(C)(1)(a) and (D)(1). These percentages decrease over time, terminating the 12th year. R.C. 709.19(C)(1)(e) and (D)(4). Contrary to Hamilton's argument, the statute does not say that an exclusion must occur within 12 years of an annexation to trigger a municipality's duty to pay. Rather, when township territory has been "annexed * * * and excluded," R.C. 709.19(B), a municipality's duty to pay the affected township commences "upon exclusion," *id.*, irrespective of when the exclusion occurred. Hamilton's argument confuses the *commencement* of a municipality's duty to pay with the *duration* of that duty.

**{¶ 23}** In summary, we conclude that the current version of R.C. 709.19 applies here. That statute imposes a *clear legal duty* on a municipality, like the city of Hamilton, to pay a township, like St. Clair Township, for taxes that would have been due the township had no annexation taken place. Nevertheless, for mandamus to lie, St. Clair still must establish, through clear and convincing evidence, a clear legal right to the relief requested and the lack of an adequate remedy in the ordinary course of law. We address the clear-legal-right inquiry in the next section.

*Clear legal right*

**{¶ 24}** The parties do not cite a case from our mandamus jurisprudence in which a political subdivision sought to compel another political subdivision to pay lost tax revenue. But because the essence of St. Clair's requested remedy is a command directing the payment of money lawfully owed, we seek guidance from other cases in which the relator's proposed remedy was of a similar character. A helpful source of guidance is the line of cases from the public-employment setting involving attempts by public employees to recover wages or benefits from their government employer. "The ministerial act of making payment of money due a public employee may be compelled by mandamus where the public employee has a clear legal right to payment of the compensation, and the respondent public officer has a clear legal duty to perform the ministerial task of making such payment." *State ex rel. Fenske v. McGovern*, 11 Ohio St.3d 129, 132, 464 N.E.2d 525 (1984).

**{¶ 25}** We have stressed in these contexts that a writ will not issue unless "the right to relief [is] clear and the amount established with certainty." *State ex rel. Manley v. Walsh*, 142 Ohio St.3d 384, 2014-Ohio-4563, 31 N.E.3d 608, ¶ 25 (collecting cases). "The term 'with certainty' generally refers to 'whether a particular amount has been precisely determined as to its value in dollars and cents' and at times 'also refer[s] to the quality of proof, in order for an employee to demonstrate that he has a clear legal right to the relief for which he prays.' " (Brackets sic.) *State ex rel. Tempesta v. Warren*, 128 Ohio St.3d 463, 2011-Ohio-

1525, 946 N.E.2d 208, ¶ 27, quoting *State ex rel. Hamlin v. Collins*, 9 Ohio St.3d 117, 120, 459 N.E.2d 520 (1984).

{¶ 26} In this case, St. Clair has not established with certainty the amount of lost tax revenue owed, a point that St. Clair concedes. Indeed, St. Clair has not ventured a guess as to what the amount might be. To calculate the amount of lost tax revenue due St. Clair Township, the annexed territory that was excluded from St. Clair Township would need to be known. But St. Clair has not identified the extent of this territory. According to the deputy county auditor, it would take the "largest forensic title exam ever" to precisely locate the excluded territory. For its part, St. Clair claims that the parcel numbers associated with the territory *could* be discerned by comparing mapping data kept by the Butler County engineer with data that accompanied the city's petition. But even St. Clair recognizes the possibility that this comparison could yield doubtful results, as St. Clair itself admits that there are "unresolved" discrepancies between the data kept by the engineer and the data reflected on the petition. An additional element needed to calculate the lost tax revenue would be the tax rate applicable to the territory that was excluded from St. Clair Township. But, again, no evidence has been offered on this point.

{¶ 27} St. Clair acknowledges these factual difficulties but argues that they are the result of actions taken by the auditor (a nonparty) and the city. This argument proceeds in two steps. First, St. Clair avers that before the city received approval to adjust St. Clair Township's boundaries, the auditor had historically failed to "create a statutorily-required inside millage rate" for that portion of St. Clair Township's territory that overlapped with the city. Second, St. Clair maintains that after the city received approval to adjust the boundaries, any obligation on the part of the auditor to create such a rate necessarily ceased because the boundary adjustment removed the overlap that had existed between the city and St. Clair Township. The confluence of these two events, in St. Clair's view,

12

"destroyed the ability to calculate the tax-revenue stream to which the R.C. § 709.19(C) and (D) percentages would otherwise have been applied."

{¶ 28} In support of this argument, St. Clair cites *Quality Ready Mix, Inc. v. Mamone*, 35 Ohio St.3d 224, 520 N.E.2d 193 (1988), in which this court held that "[t]he doctrine of legal impossibility, while relevant to the enforcement of contractual obligations, has no application to the performance of responsibilities imposed by statute," *id.* at paragraph three of the syllabus. The conundrum in that case involved conflicting duties imposed upon a mining company. The company's contractual obligations with landowners forbade it from performing reclamation work; however, its statutory obligations compelled it to perform such work. We concluded that the company must be permitted to perform its statutory obligations, reasoning that to hold otherwise would allow private parties to contract away such obligations in detriment to the General Assembly's regulatory framework. *Id.* at 228-229.

{¶ 29} This case, unlike *Mamone*, does not present a question of conflicting duties. It is plain that under the current version of R.C. 709.19(B), a city is required to pay a township for tax revenue lost as a result of that city's annexation and exclusion of township territory. The problem for St. Clair, however, is that in a mandamus action, a writ will not issue when a relator fails to meet its burden of proof with clear and convincing evidence. And that necessary factual predicate is missing here, as St. Clair has not shown with certainty the amount of lost tax revenue St. Clair Township is owed. This factual uncertainty counsels against issuance of the writ. " '[M]andamus is not well adapted to the trial of questions of fact * * *. Its office is rather to command and enforce the performance of those duties in which the public has some concern, and where the right is clear, and does not depend upon complication of disputed facts which must be settled from the conflicting testimony of witnesses.' " (Ellipsis sic.) *Manley*, 142 Ohio St.3d 384,

2014-Ohio-4563, 31 N.E.3d 608, at ¶ 27, quoting *State ex rel. Bross v. Carpenter*, 51 Ohio St. 83, 89, 37 N.E. 261 (1894).

{¶ **30**} Because we conclude that St. Clair has not shown that it has a clear legal right to the requested relief, we deny the writ. We caution, however, that our decision today is not an adjudication on the merits. *See Manley* at ¶ 31 (affirming the court of appeals' denial of a writ of mandamus but cautioning that the decision was not an adjudication on the merits). Should St. Clair attempt to institute an action in another forum to obtain its requested relief, this decision would not be a bar to such an action. *See Id.*

## CONCLUSION

{¶ **31**} For the foregoing reasons, we deny the complaint for a writ of mandamus.

Writ denied.

O'CONNOR, C.J., and FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., not participating.

_____

Gary L. Sheets, for relators.

Kegler, Brown, Hill & Ritter, and Catherine A. Cunningham, for respondents.

_____