**[Cite as *State v. Barnes*, 2020-Ohio-4150.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28613 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-1865 |
| | : | |
| CHAD BARNES | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of August, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

BEN M. SWIFT, Atty. Reg. No. 0065745, P.O. Box 49637, Dayton, Ohio 45449
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant Chad Barnes appeals from his conviction for two counts of aggravated robbery. For the reasons set forth below, we affirm.

## I. Facts and Procedural History

{¶ 2} On June 6, 2019, upon a report of an armed robbery, a Montgomery County Sheriff's deputy was dispatched to a gas station located on West Third Street in Jefferson Township. Upon arriving at the gas station, the deputy spoke with a woman and her daughter, 17-year old A. The pair informed the deputy that A. had been forced by an armed man, later identified as Barnes, to get into her mother's car. At the time, A.'s siblings, ages three and four, were already seated in the car. Barnes ordered A. to drive away, but because she did not know how to drive, A. caused the car to collide with a pole near the entrance of the gas station. Barnes exited the vehicle and ran up to and entered a black truck; the truck then drove away.

{¶ 3} The driver of the truck was Carl Wallace. He later informed the police that Barnes forced him at gunpoint to drive south on Calumet Lane for a short distance, and then Barnes ordered him to turn around and drive north. When Wallace reached the 300 block of Calumet, Barnes ordered him to stop the truck. Barnes then exited the truck and ran into a field. A Lawncrest Avenue resident informed the police that Barnes forced entry into a home located on that street. With the help of a canine unit, Barnes was subsequently apprehended nearby.

{¶ 4} Barnes was indicted on four counts of abduction in violation of R.C. 2905.02(A)(1), two counts of aggravated robbery in violation of R.C. 2911.01(A)(1), one count of trespass into a habitation in violation of R.C. 2911.12(B), and two counts of

having weapons while under disability in violation of R.C. 2923.13(A)(2). All of the abduction and aggravated robbery counts carried attendant firearm specifications. Following plea negotiations, Barnes agreed to plead guilty to the two counts of aggravated robbery and those attendant firearm specifications. In exchange, the State agreed to dismiss the remaining counts and firearm specifications. The parties did not reach an agreement as to sentencing.

{¶ 5} A plea hearing was conducted on September 20, 2019. During the proceedings, the State read, verbatim, the relevant indictment counts (Counts V and VI) and specifications into the record. The language in the indictment tracked the relevant statutory language. The State did not set forth any factual details. However, the State identified Wallace as the victim in Count V and A. as the victim in Count VI. Barnes stated that he understood the charges. He also admitted that the charges, as read into the record by the State, were true. Barnes entered a plea of guilty and submitted a plea waiver form to the trial court. The trial court accepted the plea and found Barnes guilty as charged. The court set the matter for a sentencing hearing and ordered the preparation of a presentence investigation report ("PSI").

{¶ 6} The sentencing hearing was conducted on October 18, 2019. After both Barnes and his counsel made statements regarding sentencing, the prosecutor made a statement in which she detailed the factual details of the offenses as set forth above.

{¶ 7} The trial court sentenced Barnes to a term of three years in prison for each of the gun specifications, to run consecutively with each other. The sentences for the gun specifications were ordered to run prior and consecutively to a minimum prison term of 12 years and a maximum prison term of 15 years on the aggravated robbery offenses,

for a total stated prison term of 18 to 21 years.[1]  Barnes appeals.

## II. Merger and Crim.R. 11

{¶ 8} The first and second assignments of error asserted by Barnes state:

THE TRIAL COURT ERRED WHEN IT CONSIDERED FACTS THAT BARNES DID NOT ADMIT TO AT THE TIME OF HIS GUILTY PLEA TO DECIDE THE ISSUE OF MERGER AT THE TIME OF SENTENCING.

THE TRIAL COURT FAILED TO FOLLOW THE MANDATES OF CRIM.R. 11 RENDERING BARNES' PLEA INVOLUNTARY AND UNKNOWING.

{¶ 9} Barnes's arguments in these assignments of error are interrelated and thus will be discussed together.  Barnes first contends the trial court improperly considered facts not in the record in determining whether to merge the convictions.  He next contends the trial court did not engage in a proper Crim.R. 11 colloquy because it did not properly inform him of the fact that the convictions would not merge and therefore failed to inform him of the maximum possible sentence.  Implicit in these assignments of error, although not expressly argued, is the claim that the convictions should have merged.

{¶ 10} We review the trial court's determination that the offenses were allied offenses de novo.  *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.  R.C. 2941.25, Ohio's allied offenses statute, provides:

(A) Where the same conduct by defendant can be construed to constitute

---

[1] This sentence was imposed in accord with the Reagan Tokes Law (S.B. 201), which is discussed below.

two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 11} "When determining whether two offenses are allied offenses of similar import subject to merger, the conduct of the accused must be considered." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, syllabus. The Supreme Court of Ohio later explained its holding in *Johnson* by articulating the following three-part test:

A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses:

(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm,

(2) the offenses were committed separately, or

(3) the offenses were committed with separate animus or motivation.

*State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 25.

{¶ 12} Barnes's arguments in these assignments of error are premised upon the fact that, during the sentencing hearing, the prosecutor stated for the first time the underlying factual details regarding the offenses. Barnes contends that since these facts were not presented during the plea hearing, he did not plead guilty to them, and the trial court could not consider them at sentencing when deciding whether to merge the convictions.

{¶ 13} We find this argument to be without merit. First, the trial court is entitled to refer to factual allegations set forth in the PSI. (*See* Part III, below.) In this case, the PSI set forth the underlying facts stated by the prosecutor at sentencing. Thus, these facts would have been before the trial court even if the prosecutor had omitted them.

{¶ 14} Second, as admitted by Barnes, during the plea hearing the prosecutor explicitly stated that the two charges of aggravated robbery involved separate victims. Barnes does not dispute the fact that the offenses involved different victims. In accordance with *Ruff*, this court has stated, that when offenses involve separate victims, they are of dissimilar import or significance and do not merge. *State v. Wells*, 2015-Ohio-3511, 41 N.E.3d 216, ¶ 15 (2d Dist.). The fact that the two separate offenses to which Barnes pleaded guilty involved two different victims – a fact he admits and which was stated both during the plea hearing and the sentencing hearing – was sufficient to preclude merger of the convictions for purposes of sentencing.

{¶ 15} Finally, Barnes's claim that the trial court did not conduct a proper Crim.R. 11 colloquy is simply incorrect. The record demonstrates the trial court informed Barnes that the sentences could be ordered to be served consecutively, and if this occurred, it

would lengthen the minimum and maximum terms of the sentence. The record shows Barnes acknowledged he understood the meaning of consecutive sentencing and the fact that consecutive sentences would result in longer minimum and maximum prison terms. The record also demonstrates the trial court correctly informed Barnes of the actual length of the longest minimum and maximum sentences he would face if the sentences were run consecutively. Again, Barnes indicated he understood the potential sentences.

{¶ 16} Based upon the record before us, we conclude Barnes's arguments lack merit. Therefore, the first and second assignments of error are overruled.

### III. Consecutive Sentence

{¶ 17} Barnes's third assignment of error states:

BARNES' CONSECUTIVE SENTENCE IS CONTRARY TO LAW.

{¶ 18} In this assignment of error, Barnes asserts the trial court improperly ordered the sentences for each count of aggravated robbery to run consecutively to each other. In support, he again argues that the trial court erred by considering "additional facts at the time of sentencing that Barnes did not admit at the time of his plea."

{¶ 19} R.C. 2929.14(C)(4) permits a trial court to impose consecutive sentences if it determines that: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings are satisfied:

(a) The offender committed one or more of the multiple offenses while the

offender was awaiting trial or sentencing, was under a sanction imposed

pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 20} In appeals "involving the imposition of consecutive sentences, R.C. 2953.08(G)(2)(a) directs the appellate court 'to review the record, including the findings underlying the sentence' and to modify or vacate the sentence 'if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)].' " *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 28. "[W]here a trial court properly makes the findings mandated by R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does not support the trial court's findings." *State v. Withrow,* 2016-Ohio-2884, 64 N.E.3d 553, ¶ 38 (2d Dist.). *See also State v. Gwynne,* 156 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169.

{¶ 21} Barnes does not claim the trial court failed to make the necessary statutory

findings to impose consecutive sentences or that it failed to give reasons to support its findings. Instead, he claims the court improperly considered the facts underlying the charged offenses to which he did not plead guilty.

{¶ 22} Our review of the record reveals that the trial court, both at sentencing and in its judgment entry, did make the findings required by R.C. 2929.14(E)(4)(c) and gave its reasons as required by R.C. 2929.19(B)(2)(c). Specifically, the court stated:

> The Court finds * * * that consecutive serve - - sentence is necessary to protect the public from future crime or to punish the offender. The consecutive sentences are not disproportionate to the seriousness of the offender's conduct, and to the danger the offender poses to the public. Additionally, the offender's criminal history and conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

Sentencing Tr. p. 30; *see also* Judgment Entry of Conviction, p. 2.

{¶ 23} Barnes's claim that the trial court improperly considered the facts underlying the offenses to which he did not plead guilty is not well-taken. This court has stated "the evidence the court may consider [at sentencing] is not confined to the evidence that strictly relates to the conviction offense because the court is no longer concerned * * * with the narrow issue of guilt." *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 14 (2d Dist.). Therefore, the sentencing court "may consider 'hearsay evidence, facts related to charges that were dismissed pursuant to a plea bargain, and allegations contained in a [presentence investigation] report.' " *State v. Davis*, 2d Dist. Clark No. 2018-CA-49, 2019-Ohio-1904, ¶ 47, quoting *State v. Bautista*, 2d Dist. Clark

No. 2015-CA-74, 2016-Ohio-5436, ¶ 12. As noted above, a PSI was admitted into the record. The PSI sets forth the underlying facts. Thus, those facts were properly before the trial court.

{¶ 24} Further, the PSI supported the imposition of consecutive sentences. As noted in the PSI, Barnes's prior criminal history included a charge of aggravated burglary when he was 15 years old. The PSI also showed Barnes had 12 misdemeanor convictions spanning from 2003 to 2012. His adult felony record included a 1997 conviction for aggravated robbery and burglary, two 2006 convictions for robbery, and a 2013 conviction for failure to comply.

{¶ 25} We conclude the record does not support Barnes's claim that the trial court considered any facts or evidence not properly before it. We further conclude the trial court complied with the appropriate statutory requirements before ordering consecutive service. Finally, we conclude the record supports the imposition of consecutive sentences. Accordingly, the third assignment of error is overruled.

## IV. Reagan Tokes Law

{¶ 26} The fourth assignment of error asserted by Barnes is as follows:

BARNES' SENTENCE IS CONTRARY TO LAW BECAUSE HE WAS SENTENCED PURSUANT THE [SIC] REAGAN TOKES ACT, WHICH IS UNCONSTITUTIONAL.

{¶ 27} Barnes contends the newly-enacted statutory sentencing scheme established by the Reagan Tokes Law is unconstitutional. He thus asserts his sentence imposed thereunder must be vacated.

**{¶ 28}** The Reagan Tokes Law (S.B. 201) was enacted in 2018 and became effective on March 22, 2019. R.C. 2901.011. Under the law, qualifying first- and second-degree felonies committed on or after March 22, 2019 are now subject to the imposition of indefinite sentences. The law specifies that these indefinite terms will consist of a minimum term selected by the sentencing judge from a range of terms set forth in R.C. 2929.14(A) and a maximum term determined by formulas set forth in R.C. 2929.144.

**{¶ 29}** Additionally, the law establishes a presumptive release date at the end of the minimum term imposed. R.C. 2967.271(B). However, the Ohio Department of Rehabilitation and Correction (ODRC) may rebut that presumption and keep the offender in prison for an additional period not to exceed the maximum term imposed by the sentencing judge. R.C. 2967.271(C). In order to rebut the presumption, the ODRC must conduct a hearing and determine whether any of the following factors are applicable:

(1) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated [and] [t]he offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

R.C. 2967.271(C)(1), (2) and (3).

{¶ 30} As with any statute enacted by the General Assembly, the Reagan Tokes Law is entitled to a "strong presumption of constitutionality." *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, ¶ 7. Thus, "if at all possible, statutes must be construed in conformity with the Ohio and the United States Constitutions." *State v. Collier*, 62 Ohio St.3d 267, 269, 581 N.E.2d 552 (1991). A party challenging the constitutionality of a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt. *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 41, citing *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 12.

{¶ 31} As a general rule, a constitutional argument not raised in the trial court is "waived and cannot be raised for the first time on appeal." *State v. Brewer*, 2d Dist. Montgomery No. 26153, 2015-Ohio-693, ¶ 36. However, we retain the ability "to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." *Id.*, citing *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus.

{¶ 32} Barnes claims the new sentencing provisions violate due process and the

doctrine of separation of powers. Specifically, he argues the law is unconstitutional because it permits the ODRC, rather than a trial court, to make the factual determination whether to extend a defendant's prison term. His argument is based upon the holdings in *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000) and *State v. Oneal*, Hamilton C.P. No. 1903562 (Nov. 20, 2019).

{¶ 33} In *Bray*, the Ohio Supreme Court addressed the constitutionality of R.C. 2967.11 (which has since been repealed). That statute stated, in pertinent part, that "[a]s part of a prisoner's sentence, the parole board may punish a violation committed by the prisoner by extending the prisoner's stated prison term for a period of fifteen, thirty, sixty, or ninety days in accordance with this section. If a prisoner's stated term is extended under this section, the time by which it is so extended shall be referred to as 'bad time.' " R.C. 2967.11(B). A "violation" was defined as "an act that is a criminal offense under the law of this state or the United States, whether or not a person is prosecuted for the commission of the offense." R.C. 2967.11(A). Other sections in R.C. 2967.11 articulated the procedures that were followed to determine whether a "violation" (a crime) had been committed. *Bray* at 135.

{¶ 34} The Supreme Court held, "[i]n short, R.C. 2967.11(C), (D), and (E) enable[d] the executive branch to prosecute an inmate for a crime, to determine whether a crime has been committed, and to impose a sentence for that crime." *Id.* The court held the statute improperly permitted the executive branch to act "as judge, prosecutor, and jury * * * [and thereby] intrude[d] well beyond the defined role of the executive branch as set forth in our Constitution." *Id.* Thus, the Court found the statute unconstitutional because it violated the separation of powers doctrine. *Id.* at 136.

{¶ 35} In reliance upon the reasoning in *Bray*, the trial court in *Oneal* concluded the Reagan Tokes legislation is unconstitutional because it likewise cedes judicial powers to the executive branch. The trial court noted, "[t]he conditions that the [ODRC] may consider in determining whether an offender should not be released upon the end of [his] minimum prison term may include a 'violation of law' " which, like the bad time statute "is synonymous with a criminal offense." *Oneal*, Hamilton C.P. No. 1903562, *5. *Oneal* also found the Reagan Tokes Law violates due process because it does not provide for a judicial hearing prior to the extension of a prison term beyond the minimum term.

{¶ 36} Barnes's reliance upon *Bray* and *Oneal* is misplaced because there is a significant distinction between the imposition of "bad time" as allowed by R.C. 2967.11 and the Reagan Tokes Law. R.C. 2967.11 authorized the parole board to sentence a defendant to an additional prison term beyond that which had been imposed by the trial court. In *Bray*, the defendant had served the entirety of the definite sentence imposed by the trial court; the parole board then tacked an additional prison term onto the defendant's sentence. In contrast, under Reagan Tokes, the executive branch cannot keep a defendant in prison beyond the maximum sentence imposed by the trial court. In short, Reagan Tokes does not allow the ODRC to lengthen a defendant's sentence beyond the maximum sentence imposed by the trial court. We thus conclude that *Bray* and *Oneal* do not compel the conclusion that the Reagan Tokes Law violates the separation of powers doctrine.

{¶ 37} Finally, as noted, Barnes did not raise a constitutional challenge to the Reagan Tokes Law in the trial court and thus has waived appellate review. Based upon the argument asserted in Barnes's assignment of error, we find no plain error, and

Barnes's argument does not assert a right or interest that necessitates our review.

**{¶ 38}** We therefore conclude that the necessity for a decision on Barnes's constitutional challenges is not apparent from the record at this time. Further, even had he not waived review, Barnes's argument does not compel us to conclude the Reagan Tokes Law is unconstitutional. Accordingly, the fourth assignment of error is overruled.[2]

## V. Conclusion

**{¶ 39}** All of Barnes's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
Ben M. Swift
Hon. Gerald Parker

---

[2] Barnes also contends that the Reagan Tokes Law violates his right to due process. This contention seems to be premised upon the assertion that he has a due process right to have a judge determine whether the presumed minimum prison term will be extended. This argument, though precluded by waiver, does not seem well founded. The extension of a defendant's sentence beyond the presumptive minimum term is akin to the decision to grant or deny parole. The parole decision in Ohio is an executive function that does not involve the judiciary. *See Woods v. Telb*, 89 Ohio St.3d 504, 2000-Ohio-171, 733 N.E. 2d 1103.