[Cite as *State v. Blazo*, 2020-Ohio-4636.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-L-094** |
| STEPHEN E. BLAZO, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2018 CR 000051.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Lisa A. Neroda, Jenny B. Azouri and Teri R. Daniel,* Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Edward M. Heindel,* 2200 Terminal Tower, 50 Public Square, Cleveland, OH 44113 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Stephen E. Blazo, appeals from the judgment of the Lake County Court of Common Pleas, convicting him of complicity to burglary and attempted burglary with a repeat violent offender specification. Appellant challenges the sufficiency and weight of the evidence upon which his convictions were based as well as the trial court's sentencing order. We affirm.

{¶2} During the afternoon of October 2, 2017, the Lake County Sheriff's Office received a report of an attempted residential break-in and a separate report of a successful residential break-in both on Ravenna Road, in Concord, Ohio. The first homeowner, Bill Kostelnik, contacted police after he returned to his residence and observed pry marks and damage on the side and back doors to the home. The damage was apparent, but the would-be intruder was unable to gain entry. A short distance away, the second home, owned by the Alemagno family, had similar damage to Mr. Kostelnik's home. In this case, however, the intruder was able to enter the residence where the master bedroom was ransacked, and various items taken. Evidence was collected from both residences, which included video evidence from the Alemagno's security camera.

{¶3} Based upon the security-camera videos, one M.K. became a suspect; ultimately, investigators determined M.K. was the individual who entered the Alemagno home. In light of surrounding circumstances, police determined a second suspect was driving M.K.'s vehicle to assist in the "get-aways."

{¶4} M.K. was ultimately arrested and his phone and vehicles seized and searched. Officers found a tire iron in the vehicle. The pry marks at the Alemagno residence were consistent with toolmarks made by the iron found in the vehicle. Further, paint found on the tire iron was consistent with paint from Mr. Kostelnik's home. In effect, the tool could not be eliminated as the instrument used at both locations.

{¶5} Investigators were able to obtain information from M.K.'s phone which allowed them to develop appellant as a second suspect. Appellant's phone records revealed the device was in close proximity to the incidents at the time they took place.

The records further demonstrated that appellant's phone was in contact with M.K.'s phone near the time of the burglaries.

{¶6} In October 2018, appellant was indicted on Count One, burglary, a felony of the second degree, in violation of R.C. 2911.12(A)(2), with a repeat violent offender specification; Count Two, complicity to burglary, a felony of the second degree, in violation of R.C. 2923.03(A)(2), with a repeat violent offender specification; Count Three, attempted burglary, a felony of the third degree, in violation of R.C. 2923.02; and Count Four, complicity to attempted burglary, a felony of the third degree, in violation of R.C. 2923.03(A)(2). Appellant waived his right to be present at the arraignment and thus pleas of "not guilty" were entered on his behalf.

{¶7} Prior to trial, the state dismissed Counts One and Three. Count Two was renumbered Count One and Count Four was renumbered Count Two. After hearing the evidence, the jury entered verdicts of guilty on the renumbered counts and the repeat violent offender specification. Appellant was sentenced to a term of eight years on renumbered Count One and a term of 60 months on renumbered Count Two. The court ordered the terms to be served consecutively to one another. He now appeals, assigning three errors. As they are related, we shall address assignments of error one and two together. They provide:

{¶8} "[1.] The convictions for complicity to burglary and attempted complicity to burglary were against the manifest weight of the evidence.

{¶9} "[2.] The convictions were not supported by sufficient evidence."

{¶10} When a defendant moves the trial court pursuant to Crim.R. 29, he or she is challenging the sufficiency of the evidence. A "sufficiency" argument raises a

3

question of law as to whether the prosecution offered some evidence concerning each element of the charged offense. *State v. Windle,* 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi,* 179 Ohio App.3d 326, 2008-Ohio-6062, ¶9 (11th Dist.) A challenge to the sufficiency of the evidence supporting a conviction requires an appellate court to determine whether the state met its burden of production. *State v. Thompkins,* 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring).

{¶11} In contrast, a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee,* 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *5 (Dec. 23, 1994). The role of the reviewing court is to engage in a limited weighing of the evidence in determining whether the state properly carried its burden of persuasion. *Thompkins*, *supra.* If the evidence is susceptible to more than one interpretation, an appellate court must interpret it in a manner consistent with the verdict. *State v. Banks,* 11th Dist. Ashtabula No. 2003-A-0118, 2005-Ohio-5286, ¶33.

{¶12} It is well-settled that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value * * *." *State v. Jenks,* 61 Ohio St.3d 259, 272 (1991), paragraph one of the syllabus. Circumstantial evidence involves testimony not grounded on actual personal knowledge or observation of the facts in controversy,

4

but of other facts from which inferences are drawn, showing indirectly the facts sought to be established. *State v. Nicely,* 39 Ohio St.3d 147, 150 (1988). An inference is "a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven." *State v. Nevius,* 147 Ohio St. 263 (1947). It consequently follows that "when circumstantial evidence forms the basis of a conviction, that evidence must prove collateral facts and circumstances, from which the existence of a primary fact may be rationally inferred according to common experience." *State v. Windle,* 11th Dist. Lake No. 2010-L-033, 2011-Ohio-4171, ¶34.

{¶13}  Appellant contends there was little to no evidence that he was the driver of M.K.'s vehicle when the burglary and attempted burglary occurred.  He emphasizes his face did not appear on the security camera videos; there was no DNA or fingerprint evidence connecting him to either residence or the vehicle.  Appellant asserts the state merely adduced evidence that he and M.K. were friends who enjoyed speaking with one another on their cell phones.  As a result, he maintains there was insufficient evidence to support the convictions or, at the least, the convictions were unsupported by the weight of the evidence.

{¶14}  R.C. 2911.12(A)(2) defines burglary and provides:

{¶15}  No person, by force, stealth, or deception, shall do any of the following: * * * Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense.

{¶16}  Attempt to commit an offense is defined by R.C. 2923.02, which  provides: "No person, purposely or knowingly, and when purpose or knowledge is sufficient

culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." And R.C. 2929.03, Ohio's complicity statute, provides: "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * (2) Aid or abet another in committing the offense[.]"

{¶17} Here, the state produced evidence that an attempted burglary and a successful burglary occurred within approximately 0.3 miles of one another. In the first, attempted burglary, the principal offender used an apparent tire iron to break into a residence. He was unsuccessful. In the second, the principal also used an apparent tire iron to break into a residence and was successful. The principal left the residence with various items and was caught on video surveillance both inside and outside the residence. While in the backyard area, the surveillance caught the principal stating "Where are you at? Talk to me Stevie." Appellant's name is Steve and, in an interview with investigators, he admitted he is frequently called "Stevie." In the principal's phone, one of appellant's two phone numbers (234.228.4477) lists the name "Stevie" and the other phone number (234.600.0347), the phone that was placing and receiving calls from the principal on the date of the incidents, was listed under the name "Steve."

{¶18} On the day of the incidents, appellant and the principal were on the phone with one another frequently. And, during the times the incidents occurred, i.e., between 11:00 a.m. and 11:14 a.m., phone records indicate the principal called appellant once and appellant called the principal once; the first call, from the principal, occurred at 11:02 a.m., and was about 20-30 seconds; the second call, from appellant, occurred at 11:08 and was about six minutes in length.

6

{¶19} Police were able to determine, from automatic notifications sent to Mr. Alemagno by his security-video system, that the principal entered the Alemagno residence at 11:07 a.m. and left the residence at 11:14 a.m. The phone call which commenced at 11:08 and was received by the principal from appellant's phone occurred squarely within the timeframe officers placed the principal in the residence.

{¶20} The state also introduced evidence of the "pinging" from cell phone towers which placed both phones in the vicinity of the burglaries. Although the cell-phone-tower evidence could not place either party in the exact location of the incidents, it provided some visual evidence that, at specific times calls were placed, the phones were traveling in a similar direction, i.e., from Trumbull County to Lake County.

{¶21} Finally, during his police interview, appellant stated he neither "hung out" nor was he friends with M.K. and portrayed him as crazy and violent. He additionally stated he would not enter M.K.'s vehicle because, inter alia, he carries a firearm. However, video evidence obtained from a Walmart in Austintown, Ohio, from September 29, 2017, depicted appellant and M.K. entering the store with a large jar of change and leaving in M.K.'s vehicle. These points demonstrate the two men did associate more than appellant initially admitted and that appellant was not entirely averse to traveling in M.K.'s vehicle.

{¶22} The state's evidence that M.K. entered the Alemagno residence at 11:07 a.m. and left at 11:14 a.m. provide a basic timeframe in which the incidents were committed; and the timing of the 11:02 a.m., as well as the 11:08 a.m. call, each between appellant's phone and M.K.'s phone, support the state's theory that the former call occurred during or immediately after the attempted burglary of Mr. Kostelnik's

residence. Given these points, as well as the close proximity of the incidents and M.K.'s specific reference to "Stevie" while committing the second burglary and while connected to appellant's phone, provide sufficient, credible evidence that appellant was complicit, as the driver of the "get away" vehicle, in both the attempted burglary and the successful burglary. Appellant's first and second assignments of error lack merit.

{¶23} Appellant's third assignment of error provides:

{¶24} "The trial court erred at sentencing when it imposed maximum and consecutive sentences."

{¶25} Appellant first takes issue with the court's imposition of maximum terms of imprisonment for each crime. Recently, in *State v. Gwynne*, 156 Ohio St.3d 279, 2019-Ohio-4761, the Supreme Court of Ohio clarified that R.C. 2929.11 and R.C. 2929.12 apply to the review of the duration of individual sentences. *Gwynne*, *supra*, at ¶17-18. R.C. 2929.11 addresses the purposes and principles of felony sentencing and R.C. 2929.12 sets forth "seriousness" and "recidivism" factors. A sentencing court is not required to use specific language and render precise findings to satisfactorily "consider" the relevant seriousness and recidivism factors. *State v. Long,* 11th Dist. Lake No. 2013-L-102, 2014-Ohio-4416, ¶79. Instead, the defendant has the burden to affirmatively show that the court did not consider the applicable sentencing criteria or that the sentence imposed is "strikingly inconsistent" with applicable sentencing factors. *Id.* Thus, we presume a trial court considered the statutory purposes, principles, and factors from a silent record. *State v. Morefield*, 2d Dist. Clark No. 2013-CA-71, 2014-Ohio-5170, ¶41.

8

{¶26} In *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, the Supreme Court stated:

{¶27} We note that some sentences do not require the findings that R.C. 2953.08(G) specifically addresses. Nevertheless, it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court. That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence. *Marcum, supra*, at ¶23.

{¶28} Here, the trial court expressly considered the purposes and principles of felony sentencing as well as the seriousness and recidivism factors it found relevant to appellant's case. Specifically, the court stated at the sentencing hearing:

{¶29} I've reviewed the presentence report, obviously sat here during the course of the trial. I considered the purposes and principles of felony sentencing, the overriding purposes being to punish the offender and protect the public from future crime by the offender and others using the appropriate sanctions. And I've also considered the need for incapacitation, deterrence, rehabilitation and restitution. The sentence will be commensurate with and not demeaning to the seriousness of the defendant's conduct and its impact on the victim will be consistent with similar crimes by similar offenders. I considered the seriousness and the recidivism factors under 2929.12.

{¶30} I find that the victims suffered at the very least psychological and economic harm. That the defendant acted as part of an organized criminal activity with [M.K.]. The factors that indicate it's less serious, I don't find any applicable. And under the factors that indicate recidivism is more likely, in speaking with the probation officer you are on some federal parole as I understand it.

{¶31} * * *

{¶32} Under the factors that indicate less likely. I don't find anything applicable. * * * I'm going to find that you were previously convicted of burglary in Mahoning County in case number 2000-CR-605 in May of 2001; you have a burglary, a felony of the second

9

degree in Mahoning County case number 2005-CR-059, April 10, 2007; burglary, a felony of the second degree in Mahoning County; 2005-CR-119 burglary, August 10, 2010 [sic]; burglary, a felony of the second degree in Mahoning County case number 2006-CR-178 April 10, 2007; aggravated burglary, a felony of the first degree in Cuyahoga County CR-88-233773-A July 26th, 1989.

{¶33} In the presentence report, it indicates that you've been to prison five separate times * * * [T]hat's state prison five times, it does not include the federal incarceration. So among those convictions that are part of the specification that you stipulated to and that I repeated a few minutes ago those are among fourteen felony convictions, this is now fifteen so you've kind of set forth how you want to live your life and you keep doing it.

{¶34} The foregoing findings are supported by the record and therefore we hold the trial court did not err in imposing the maximum duration of imprisonment for each conviction.

{¶35} Next, appellant challenges the trial court's order that his terms of imprisonment be served consecutively. We review consecutive sentences imposed pursuant to R.C. 2929.14(C)(4) under R.C. 2953.08(G)(2), which states:

{¶36} The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶37} The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

{¶38} (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

{¶39} (b) That the sentence is otherwise contrary to law.

{¶40} Appellate courts "'may vacate or modify any sentence that is not clearly and convincingly contrary to law'" only when the appellate court clearly and convincingly finds that the record does not support the sentence. *State v. Wilson*, 11th Dist. Lake No. 2017-L-028, 2017-Ohio-7127, ¶8, quoting *Marcum, supra*, at ¶23.

{¶41} Further, R.C. 2929.14(C)(4) provides, in relevant part, as follows regarding consecutive felony sentences:

{¶42} If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

{¶43} (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶44} (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶45} (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. R.C. 2929.14(C)(4).

{¶46} At the sentencing hearing, the court articulated the following findings:

{¶47} I'm going to find that consecutive sentences are necessary to protect the public from future crime and to punish the offender. And that consecutive sentences are proportionate to the seriousness of your conduct and the danger, the obvious danger that you pose to the public. I'm also going to find that history of criminal conduct demonstrates that consecutive sentences are necessary to protect

11

the public from future crime by you. In that regard, there is a number of times amongst your fourteen convictions that you were given concurrent time on some other cases so there is no question that consecutive sentences, that a consecutive sentence is necessary in this case.

{¶48} The trial court's findings are supported by the record. Further, they comport with statute and, as a result, the court's imposition of consecutive sentences is not contrary to law.

{¶49} Appellant's third assignment of error lacks merit.

{¶50} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, J.,

MARY JANE TRAPP, J.,

concur.