[Cite as *State v. Estes*, 2014-Ohio-767.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2013-04-001 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 3/3/2014 |
| - vs - | | |
| | : | |
| JOSHUA P. ESTES, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 11-CR-10806

Martin P. Votel, Preble County Prosecuting Attorney, Kathryn M. West, 101 East Main Street, Eaton, Ohio 45320, for plaintiff-appellee

McClain Anastasi, LLC, Brandon Charles McClain, 70 Birch Alley, Suite 240, Beavercreek, Ohio 45440, for defendant-appellant

**S. POWELL, J.**

{¶ 1} Defendant-appellant, Joshua P. Estes, appeals from the conviction and sentence he received in the Preble County Court of Common Pleas following his guilty plea to single counts of voluntary manslaughter, aggravated arson, tampering with evidence and gross abuse of a corpse. For the reasons outlined below, we affirm.

{¶ 2} On October 24, 2011 at 6:39 p.m., authorities were dispatched to a house fire

located at 7926 State Route 177, Camden, Preble County, Ohio. After extinguishing the fire, the body of Terence Grigg, the home owner, was located inside the ruble. Grigg's body was then taken to the Montgomery County Coroner's Office where it was discovered Grigg had died as a result of multiple stab wounds. Initial investigation revealed Estes knew Grigg and that Estes had been to Grigg's house several times throughout that day.

{¶ 3} Three days later, on October 27, 2011, Estes went to the Preble County Sheriff's Office where he submitted to an interview with detectives. During that interview, Estes admitted to stabbing Grigg and setting the house on fire in an apparent attempt to conceal his crime.

{¶ 4} On November 7, 2011, the Preble County grand jury returned an indictment charging Estes with murder, aggravated arson, tampering with evidence and gross abuse of a corpse. After entering into plea negotiations, and following a competency hearing, Estes agreed to plead guilty to a reduced charge of voluntary manslaughter, as well as one count each of aggravated arson, tampering with evidence and gross abuse of a corpse. The plea agreement also included an agreed sentence of 20 years in prison.

{¶ 5} On July 9, 2012, Estes entered his guilty plea and was subsequently sentenced to the agreed 20-year prison term. Prior to sentencing, Estes did not raise any issues in regards to merger. Estes now appeals from his conviction and sentence, raising one assignment of error for review.

{¶ 6} THE TRIAL COURT COMMITTED PLAIN ERROR BY IMPOSING SEPARATE CONVICTIONS AND SENTENCES UPON MR. ESTES FOR ALLIED OFFENSES ARISING OUT OF THE SAME CONDUCT AND SIMILAR IMPORT.

{¶ 7} In his single assignment of error, Estes argues the trial court committed plain error by failing to merge his aggravated arson, tampering with evidence and gross abuse of a corpse convictions for purposes of sentencing. We disagree.

- 2 -

{¶ 8} Pursuant to R.C. 2941.25, Ohio's multiple-count statute, the imposition of multiple punishments for the same criminal conduct is prohibited. *State v. Brown*, 186 Ohio App.3d 437, 2010-Ohio-324, ¶ 7 (12th Dist.). Specifically, R.C. 2941.25 states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 9} The Ohio Supreme Court established a two-part test for determining whether offenses are allied offenses of similar import under R.C. 2941.25 in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. Under the *Johnson* test, the first inquiry focuses on whether it is possible to commit the offenses with the same conduct. *State v. Richardson*, 12th Dist. Clermont No. CA2012-06-043, 2013-Ohio-1953, ¶ 21, citing *Johnson* at ¶ 48. In making this determination, it is not necessary that the commission of one offense would always result in the commission of the other. *State v. Jackson*, 12th Dist. Clermont No. CA2013-04-037, 2013-Ohio-5371, ¶ 10. Rather, the question is merely whether it is possible for the offenses to be committed with the same conduct. *State v. Craycraft*, 193 Ohio App.3d 594, 2011-Ohio-413, ¶ 11 (12th Dist.); *State v. Marlow*, 12th Dist. Clermont No. CA2012-07-051, 2013-Ohio-778, ¶ 10.

{¶ 10} If it is possible to commit the offenses with the same conduct, the second inquiry under the *Johnson* test focuses on whether the offenses were in fact committed by the same conduct; that is, by a single act, performed with a single state of mind. *State v. Lung*, 12th Dist. Brown No. CA2012-03-004, 2012-Ohio-5352, ¶ 11, citing *Johnson* at ¶ 49. If so, the offenses are allied offenses of similar import and must be merged. *State v. Luong*,

12th Dist. Brown No. CA2011-06-110, 2012-Ohio-4520, ¶ 39. However, if the commission of one offense will never result in the commission of the other, "or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *State v. Standifer*, 12th Dist. Warren No. CA2011-07-071, 2012-Ohio-3132, ¶ 66, quoting *Johnson* at ¶ 51. The term "animus" is defined as "'purpose' or 'more properly, immediate motive.'" *Lung* at ¶ 12, quoting *State v. Logan*, 60 Ohio St.2d 126, 131 (1979).

{¶ 11} Estes acknowledges that he failed to raise any objection to the multiple punishments he received as a result of the plea bargain and agreed sentence. However, although failing to object, absent a stipulation or agreement on the allied offenses issue, the imposition of multiple punishments for allied offenses is reviewable under the plain error analysis "even if a defendant has entered into a plea bargain and even if the sentence was an agreed sentence under R.C. 2953.08(D)." *State v. Anderson*, 1st Dist. Hamilton No. C-110029, 2012-Ohio-3347, ¶ 14; *see also State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 29 (noting "nothing in this decision precludes the state and a defendant from stipulating in the plea agreement that the offenses were committed with separate animus, thus subjecting the defendant to more than one conviction and sentence"). Pursuant to Crim.R. 52(B), plain error exists where there is an obvious deviation from a legal rule that affected the outcome of the proceeding. *State v. Blanda*, 12th Dist. Butler No. CA2010-03-050, 2011-Ohio-411, ¶ 20, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). The imposition of multiple punishments for allied offenses of similar import amounts to plain error. *State v. Willis*, 12th Dist. Butler No. CA2012-08-155, 2013-Ohio-2391, ¶ 35.

{¶ 12} As noted above, after entering into a plea agreement, Estes pled guilty and was convicted of single counts of aggravated arson, tampering with evidence and gross abuse of a corpse. Aggravated arson in violation of R.C. 2909.02(A)(2) provides "[n]o person, by

means of fire or explosion, shall knowingly * * * [c]ause physical harm to any occupied structure." On the other hand, tampering with evidence in violation of R.C. 2921.12(A)(1) provides "no person, knowing that an official proceeding or investigation is in progress, or is likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." Finally, gross abuse of a corpse in violation of R.C. 2927.01(B) provides "[n]o person, except as authorized by law, shall treat a human corpse in a way that would outrage reasonable community sensibilities." The state concedes, and we agree, that it is possible for these three offenses to be committed with the same conduct.

{¶ 13} Before turning to the second prong in the *Johnson* analysis, we note that appellate courts, including this court, have recognized the "challenges inherent in allowing a criminal defendant to raise, on appeal, an allied offense attack to a negotiated plea because the reviewing court has a limited record of facts, if any, upon which to make an allied offenses analysis." *State v. Tannreuther*, 12th Dist. Butler No. CA2013-04-062, 2014-Ohio-74, ¶ 16, quoting *State v. Vitt*, 9th Dist. Medina App. No. 11 CA0071-M, 2012-Ohio-4438, ¶ 10. However, even when salient facts are lacking, a court must still make an allied offenses determination by looking to the information contained in the record, including the indictment and bill of particulars. *Id*. In other words, and as recently noted by the Ohio Supreme Court, "[w]hen deciding whether to merge multiple offenses at sentencing pursuant to R.C. 2941.25, a court must review the entire record * * * to determine whether the offenses were committed separately or with a separate animus." *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, syllabus.

{¶ 14} As Estes pled guilty to the offenses, there was no witness testimony at the plea hearing, nor did the state offer any facts establishing Estes' conduct at sentencing. Nevertheless, after reviewing the entire record before us, we find the record contains

sufficient facts from the complaint, indictment, bill of particulars and competency report admitted as a joint exhibit at Estes' competency hearing to allow for our meaningful review.

{¶ 15} Here, although possible for these three offenses to be committed with the same conduct, the facts indicate that they were not. As noted in the complaint, indictment and bill of particulars, three days after Grigg's body was discovered, Estes admitted to the killing and setting the house on fire. Specifically, as stated in the bill of particulars:

> [Estes] admitted to stabbing [Grigg] Monday morning, October 24, 2011; that Estes further admitted that he returned to the home that evening and set the house on fire to destroy evidence of the crime because he was afraid he was going to 'get caught.'

The competency report, however, contains a much more detailed description of Estes conduct at issue here.

{¶ 16} According to the competency report, after having an argument with his girlfriend, Estes went to Grigg's house. Estes classified Grigg as "one of [his] drug dealers" from whom he would often buy pain pills and with whom Estes would drink alcohol. After arriving at the house, Estes claimed Grigg offered to let him stay at the house for a while, which he agreed to do. Estes then called his girlfriend and arranged to pick up some of his belongings. However, after arriving at his girlfriend's home, Estes got into another argument regarding his son, wherein he "threw a fit" and broke several picture frames. Estes then returned to Grigg's home where he claims he "wound up drinking [himself] drunk and stupid," before eventually falling asleep on the couch.

{¶ 17} At approximately 10:00 a.m. the next morning, Estes claims he awoke to find Grigg standing over him wearing nothing but a robe. Unnerved by Grigg's appearance, Estes stated that he thought Grigg was "trying to make [him] his boyfriend because [he] was staying there." Estes then claims that as he tried to get up, Grigg wrapped his arms around him. In response, Estes stated that he grabbed a knife that was sitting on a nearby table and

- 6 -

stabbed Grigg repeatedly before Grigg made a "screeching" sound and fell to the floor.

{¶ 18} Continuing, Estes stated he went to the back porch where four gallons of gasoline were stored and began pouring the gas all "over the area." Covered in blood, Estes claims he then changed his clothes and took a shower. Estes then called his stepsister's boyfriend's mother to come get him, before placing a lit propane torch on the ground. When asked about the torch, the competency report indicates Estes "placed the lit torch in the aforementioned position because he 'figured on letting [the house] burn.'"

{¶ 19} Later that day, Estes claims he called an unnamed individual living in the area to find out if the house had burned down or if he had heard any other information. Learning that the house had not burned down, Estes claims he went back to Grigg's house and used the propane torch to successfully ignite a gasoline soaked blanket laying on the floor. Estes claims he then left the house, pawned several of his items and bought a "bunch of heroin" because his "nerves were shot."

{¶ 20} Contrary to Estes' claim otherwise, we find the three offenses were not committed with the same conduct. For instance, Estes' tampering with evidence conviction was based on Estes showering and changing his blood stained clothes shortly after stabbing Grigg multiple times. As noted above, tampering with evidence merely requires the alteration, destruction, or removal of any "thing" with the purpose to impair its value or availability as evidence. *See generally State v. Yoder*, 10th Dist. Franklin No. 10AP-653, 2011-Ohio-3308, ¶ 32 (finding sufficient evidence to support tampering with evidence conviction where appellant disposed of his bloody clothes and knife used in a stabbing); *State v. Garrett*, 8th Dist. Cuyahoga No. 80172, 2003-Ohio-274, ¶ 72-73 (finding tampering with evidence conviction was not against manifest weight of the evidence where testimony revealed appellant burned the clothes he was wearing at the time of the murder).

{¶ 21} Furthermore, Estes' gross abuse of a corpse conviction was based on his

separate conduct of dousing Grigg's body with gasoline and attempting to set it on fire shortly after the killing. Such conduct would clearly outrage reasonable community sensibilities. *See, e.g., State v. Langley*, 6th Dist. Sandusky No. S-02-037, 2004-Ohio-2459, ¶ 61 (placing a garbage bag over the head and torso of a body, in apparent contemplation of disposing of the body, and throwing alcohol on and around a body found to constitute gross abuse of a corpse). Due to Estes' separate conduct establishing these two offenses, we find this case markedly different from those in which tampering with evidence and gross abuse of a corpse were subject to merger. *See State v. Shears*, 1st Dist. Hamilton No. C-120212, 2013-Ohio-1196, ¶ 43 (finding tampering with evidence and gross abuse of a corpse were subject to merger where appellant murdered a man and then placed his body in a trunk in the garage of a vacant house); *State v. Crisp*, 4th Dist. Scioto No. 10CA3404, 2012-Ohio-1730, ¶ 37-39 (finding tampering with evidence and gross abuse of corpse convictions were subject to merger where appellant murdered a pregnant woman and disposed of her body in a state park).

{¶ 22} Finally, Estes' aggravated arson conviction was based on Estes successfully lighting a gasoline soaked blanket on fire after he returned to the scene later that day. In turn, due to the vast time difference, Estes' conduct used to establish this charge was wholly separate from that used to support his tampering with evidence or gross abuse of a corpse convictions. Therefore, although faced with a limited record on appeal, we nevertheless find Estes has failed to establish he committed each of these three offenses with the same conduct; that is, by a single act, performed with a single state of mind. Estes' single assignment of error lacks merit and is therefore overruled.

{¶ 23} Judgment affirmed.

RINGLAND, P.J., and M. POWELL, J., concur.