[Cite as *State v. Bontrager*, 2022-Ohio-1367.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 21CA1139 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| v. | : | |
| Jonas Bontrager, | : | **RELEASED 4/19/2022** |
| Defendant-Appellant. | : | |

_____
<u>APPEARANCES</u>:

Brian T. Goldberg, Cincinnati, Ohio, for appellant.

David Kelley, Adams County Prosecuting Attorney, and Mark R. Weaver and Ryan M. Stubenrauch, Assistant Prosecuting Attorneys, West Union, Ohio, for appellee.
_____
Hess, J.

{¶1} Jonas Bontrager appeals his convictions for two counts of involuntary manslaughter, corrupting another with drugs, trafficking in drugs, and possession of drugs. In his first assignment of error, Bontrager contends that the trial court erred when it failed to merge allied offenses of similar import at sentencing. We conclude that the trial court should have merged Counts II and III and that it should have merged Counts V and VI. However, Bontrager failed in his burden to establish that the court should have merged Count V with any additional counts. Therefore, we sustain in part and overrule in part the first assignment of error. We reverse the convictions on Counts II, III, V, and VI, and we remand for a new sentencing hearing with respect to those counts at which the state must elect which allied offenses it will pursue against Bontrager.

**{¶2}** In his second assignment of error, Bontrager contends that the trial court erred when it imposed consecutive prison terms for some offenses because the record does not support the imposition of consecutive sentences. The trial court ordered Bontrager to serve the term for Count II consecutive with the term for Count I and to serve the term for Count III consecutive with the terms for Counts I and II. However, we have already determined that we must reverse the convictions on Counts II and III and remand for resentencing on those counts because the trial court should have merged them. As a result, there are no consecutive sentences for us to review at this time. Therefore, the second assignment of error is moot, and we need not address it.

**{¶3}** In his third assignment of error, Bontrager contends that the trial court erred by sentencing him under the Reagan Tokes Law because it is unconstitutional. However, Bontrager has not met his burden to establish beyond a reasonable doubt that the law is unconstitutional. Therefore, we overrule the third assignment of error. Accordingly, we affirm the trial court's judgment in part, reverse it in part, and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY[1]

**{¶4}** Around December 1, 2019, Shyonda Burton moved in with Bontrager. Shortly after that, he learned she was pregnant. Twice a week, Bontrager would drive various people to the Cincinnati area to buy drugs. In exchange, they would give him gas money and a capsule of heroin or fentanyl for Burton. On May 19, 2020, he drove four people to buy drugs. Bontrager does not use drugs and did not purchase any for himself.

---

[1] The facts are taken from Bontrager's testimony and statements by defense counsel at the change of plea hearing and also from the pre-sentence investigation report, which the trial court read into the record at the sentencing hearing.

One of the people he drove gave him a capsule for Burton. When Bontrager got home, he gave the capsule to Burton, who was six or seven months pregnant, and she did "a shot" in her hand around 7:30 or 8:00 p.m. Later, she did a "couple of washes" or "[r]inses" to "suck up some more" of the drug from the residue. On May 20, 2020, around 2:00 a.m., Bontrager spoke to Burton. At some point she tried to do a third wash, but according to Bontrager, "[s]he couldn't do nothing [sic]." Her "heart was beating fast. She was breathing fast, and she couldn't do it." Around 3:00 a.m., she fell partly onto a bed. A few minutes later, he moved her fully onto the bed and thought she was dead because she did not respond to him moving her. He checked her breathing and contacted a neighbor to come over. The neighbor immediately said Burton was deceased, and Bontrager called 911. Bontrager said he believed Burton was unresponsive for one to two hours before he called for help. Burton died from fentanyl intoxication in conjunction with endocarditis, an infection on the tricuspid heart valve, and her pregnancy terminated.

{¶5}   The Adams County grand jury indicted Bontrager on the following charges, all alleged to have occurred "[o]n or about and between May 19, 2020 and May 21, 2020": (1) Count I, involuntary manslaughter in violation of R.C. 2903.04(A), a first-degree felony; (2) Count II, involuntary manslaughter in violation of R.C. 2903.04(A), a first-degree felony; (3) Count III, corrupting another with drugs in violation of R.C. 2925.02(A)(5), a first-degree felony; (4) Count IV, corrupting another with drugs in violation of R.C. 2925.02(A)(3), a second-degree felony; (5) Count V, trafficking in drugs in violation of R.C. 2925.03(A)(1), a fourth-degree felony; and (6) Count VI, possession of drugs in violation of R.C. 2925.11(A), a fifth-degree felony.

**{¶6}** Count I alleged that Bontrager caused the death of Burton as a proximate result of committing or attempting to commit a felony, to wit, the same felonies charged in Counts III-VI. Count II alleged that Bontrager caused the unlawful termination of Burton's pregnancy as a proximate result of committing or attempting to commit a felony, to wit, the same felonies charged in Counts III-VI. Count III alleged that he knowingly furnished fentanyl to a pregnant woman, Burton, when he knew she was pregnant or was reckless in that regard. Count IV alleged that he knowingly furnished fentanyl to Burton and thereby caused serious physical harm to her. Count V alleged that he knowingly sold or offered to sell fentanyl in an amount less than the bulk amount. Count VI alleged that he knowingly obtained, possessed, or used fentanyl in an amount less than the bulk amount. Bontrager initially pleaded not guilty but later pleaded guilty as charged.

**{¶7}** With respect to sentencing, the parties agreed that Counts V and VI should merge. Bontrager also argued that Counts I and IV should merge, Counts II and III should merge, and Counts V and VI should merge with Count III and Count IV. The trial court merged Counts I and IV, and the state elected to proceed to sentencing on Count I. The court sentenced Bontrager to 8 to 12 years in prison on Count I, 8 to 12 years on Count II, 6 to 9 years on Count III, 12 months on Count V, and 10 months on Count VI. The court ordered him to serve the sentence on Count II consecutive with the sentence on Count I and the sentence on Count III consecutive with the sentences on Counts I and II. The court ordered him to serve the sentences on Counts V and VI concurrent to the other sentences.

## II. ASSIGNMENTS OF ERROR

**{¶8}** Bontrager assigns three errors for our review:

I.      The trial court erred to the prejudice of Mr. Bontrager by failing to merge allied offenses of similar import at the time of sentencing.

II.     The trial court erred to the prejudice of Mr. Bontrager by improperly sentencing him to consecutive prison terms.

III.    The Reagan Tokes Act, as enacted by the Ohio legislator [sic] is unconstitutional, and the trial court erred by sentencing Mr. Bontrager under that act.

### III.  ALLIED OFFENSES OF SIMILAR IMPORT

{¶9}  In the first assignment of error, Bontrager contends that the trial court erred when it failed to merge allied offenses of similar import at sentencing.

### A.  General Principles and Standard of Review

{¶10}  The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  "This protection applies to Ohio citizens through the Fourteenth Amendment to the United States Constitution * * * and is additionally guaranteed by the Ohio Constitution, Article I, Section 10."  *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10.  "Regarding multiple punishments for the same offense, the Double Jeopardy Clause prohibits 'the sentencing court from prescribing greater punishment than the legislature intended.' "  *State v. Pendleton*, 163 Ohio St.3d 114, 2020-Ohio-6833, 168 N.E.3d 458, ¶ 8, quoting *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).  "When determining whether multiple punishments may be imposed for the same offense, our focus is on legislative intent."  *Id.*

{¶11}  "The General Assembly enacted R.C. 2941.25 to identify when a court may impose multiple punishments[.]"  *State v. Fannon*, 2018-Ohio-5242, 117 N.E.3d 10, ¶ 130 (4th Dist.).  R.C. 2941.25 states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶12}** The sentencing court has a mandatory duty to merge allied offenses of similar import. *State v. Stapleton*, 4th Dist. Pickaway No. 19CA7, 2020-Ohio-4479, ¶ 50. However, the defendant has the burden to establish that R.C. 2941.25 prohibits multiple punishments. *Id.* at ¶ 52. "We apply a de novo standard to review a trial court's determination of whether offenses constitute allied offenses of similar import requiring merger under R.C. 2941.25." *Fannon* at ¶ 131, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

**{¶13}** "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import." *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at paragraph one of the syllabus. "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus. "Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows

that the offenses were committed with separate animus."   *Id.* at paragraph three of the syllabus.

### B.  Counts V and VI

**{¶14}** Bontrager maintains that the trial court should have merged Count V, trafficking in drugs in violation of R.C. 2925.03(A)(1), and Count VI, possession of drugs in violation of R.C. 2925.11(A).  He asserts that those offenses occurred on the same date, at the same time, with the same drugs, and with the same animus of gifting drugs to Burton.  Bontrager emphasizes the lack of evidence that he intended to use any of the fentanyl himself.   Bontrager relies on *State v. Daboni*, 4th Dist. Meigs Nos. 18CA3, 18CA4, 18CA5, 2018-Ohio-4155, and *State v. Shaw*, 4th Dist. Scioto No. 07CA3190, 2008-Ohio-5910, to support his position. The state concedes that the trafficking and possession offenses should merge.

**{¶15}**  R.C. 2925.03(A)(1), the statute on trafficking offenses, provides that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance * * *."  Selling includes gifting.  *See* R.C. 2925.01(A) (as used in R.C. Chapter 2525, "sale" has the same meaning as in R.C. 3719.01); R.C. 3719.01(U) ("sale" includes gift).  Count V alleged that Bontrager knowingly sold or offered to sell fentanyl.  R.C. 2925.11(A), the statute on drug possession offenses, provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance * * *."   Count VI alleged that Bontrager knowingly obtained, possessed, or used fentanyl.

**{¶16}**  Counts V and VI are of similar import.  R.C. 2925.03(A)(1) and 2925.11(A) are aimed at preventing harm to society as a whole rather than to a particular victim.  The victim of these offenses was society in general, and the harm was not separate and

identifiable.  *See generally Daboni* at ¶ 53 ("The offenses of possession and trafficking in drugs * * * are similar in significance and import where, as is the case here, the victims of the offense were the same and the harm was not separate and identifiable.  As conceded by both parties, the victims of these offenses is society in general").

**{¶17}** Bontrager did not commit Counts V and VI separately or with a separate animus.  The record reflects that the offenses occurred on the same day and involved the same capsule of fentanyl.  The possession offense began when Bontrager obtained and took possession of the fentanyl capsule and was still in progress when he took the capsule home and trafficked in drugs by gifting it to Burton.  The record reflects that Bontrager does not use drugs, and his only animus for possessing and trafficking in drugs was to make a gift to Burton.  *See generally Daboni*, 4th Dist. Meigs No. 18CA3, 18CA4, 18CA5, 2018-Ohio-4155, at ¶ 54-56 (possession and trafficking not committed separately or with separate animus where charges involved the same substance found on same date in the same residence and there was no evidence the defendant possessed any of the drugs for personal use); *Shaw*, 4th Dist. Scioto No. 07CA3190, 2008-Ohio-5910, at ¶ 14 (possession and trafficking committed with single animus where record indicated defendant possessed and trafficked in drugs with purpose of selling them and nothing suggested he intended to retain a portion of the drugs for his own use).

**{¶18}** For the foregoing reasons, we conclude that Counts V and VI are allied offenses of similar import and that the trial court erred when it did not merge them.

### C.  Counts II and III

**{¶19}** Bontrager maintains that the trial court should have merged Count II, involuntary manslaughter in violation of R.C. 2903.04(A), and Count III, corrupting another

with drugs in violation of R.C. 2925.02(A)(5). He asserts that the same conduct—furnishing Burton with fentanyl—is the basis for both offenses. Bontrager acknowledges that the record indicates he stayed with Burton after giving her the fentanyl and that she did not immediately pass away after using it. However, he asserts those facts are immaterial because he "did not attempt to conceal his actions or commit any further act justifying a conviction for both charges."

{¶20} The state maintains that Bontrager committed Counts II and III separately and with a separate animus. The state asserts that Bontrager committed Count III when he gave the fentanyl capsule to Burton knowing she was pregnant. The state asserts that he then watched while Burton "experienced heavy breathing and a racing heart" and "laid down and became unresponsive," but he did not get help for up to two hours. The state asserts that his "callous inaction and indifference" to Burton's unborn child "is the separate and distinct action that caused" the conviction on Count II. The state claims that "[m]any courts have held that similar actions constituted separate conduct for purposes of merger" and cites *State v. Patterson*, 11th Dist. Trumbull No. 2013-T-0062, 2015-Ohio-4423; *State v. Jones*, 11th Dist. Trumbull No. 92-T-4764, 1993 WL 548475 (Dec. 17, 1993); and *State v. Estes*, 12th Dist. Preble No. CA2013-04-001, 2014-Ohio-767.

{¶21} R.C. 2903.04(A), the statute on involuntary manslaughter, states: "No person shall cause * * * the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony." " 'Unlawful termination of another's pregnancy' means causing the death of an unborn member of the species homo sapiens, who is or was carried in the womb of another, as a result of injuries inflicted during the period that begins with fertilization and that continues unless

and until live birth occurs."   R.C. 2903.09(A).   R.C. 2925.02(A)(5), the statute on corrupting another with drugs, states:  "No person shall knowingly * * * [b]y any means, furnish or administer a controlled substance to a pregnant woman or induce or cause a pregnant woman to use a controlled substance, when the offender knows that the woman is pregnant or is reckless in that regard."

{¶22}  Counts II and III are of similar import.  The offenses did not result in separate and identifiable harm.  Both offenses resulted in the unlawful termination of Burton's pregnancy.  Burton's unborn child was the victim of both offenses.  *See generally State v. Feller*, 2012-Ohio-6016, 985 N.E.2d 210, ¶ 34-36 (unborn child victim of reckless homicide offense); *State v. Scott*, 5th Dist. Stark No. 2013CA00063, 2013-Ohio-5875, ¶ 7, 21, 28 (unborn child victim of voluntary manslaughter offense).

{¶23} The record reflects that Bontrager did not commit Counts II and III separately or with a separate animus.  The state relied on the same conduct to prove both offenses.  Count III alleged that Bontrager knowingly furnished fentanyl to Burton when he knew she was pregnant or was reckless in that regard.  This same conduct was the basis for Count II, which alleged that Bontrager caused the unlawful termination of Burton's pregnancy as a proximate result of committing or attempting to commit the same felonies charged in Counts III-VI. Bontrager did not commit the predicate felonies separately.  On May 19, 2020, while in possession of a single capsule of fentanyl (Count VI), he trafficked drugs by selling (gifting) the capsule to Burton (Count V), knowingly furnished her with the capsule knowing she was pregnant (Count III), and knowingly furnished her with the capsule, thereby causing her to suffer serious physical harm later (Count IV).  He caused the unlawful termination of her pregnancy as a proximate result

of this conduct (Count II).  Therefore, we conclude that Bontrager did not commit Counts II and III separately.  The state could not rely on Bontrager's failure to secure medical attention to prove Count II because the indictment did not allege that Bontrager caused the unlawful termination of Burton's pregnancy as a proximate result of that failure to act.  That failure is beyond the scope of the predicate offenses alleged in the indictment.  Moreover, the record does not reveal that Bontrager had any animus in committing Counts II and III other than to make a gift to Burton, so we cannot conclude that he committed those counts with a separate animus.

{¶24}  The state's reliance on *Patterson* is misplaced.  In that case, Tyler Stevens arranged to buy heroin from James Lamar Patterson for seventeen-year-old Christine Sheesley.  *Patterson*, 11th Dist. Trumbull No. 2013-T-0062, 2015-Ohio-4423, at ¶ 1, 3, 20.  Patterson went to Stevens's apartment, sold the heroin, and left.  *Id.* at ¶ 20-21.  Stevens injected himself and Sheesley with the heroin.  *Id.* at ¶ 21.  Stevens passed out and awoke to find Sheesley passed out in a recliner.  *Id.*  Later, Stevens became concerned and tried to awaken her.  *Id.*  Patterson returned at Stevens's request, looked at Sheesley, and " 'said she would be all right.' "  *Id.*  Stevens did not contact police until the following morning.  *Id.* at ¶ 22.  Sheesley was dead when law enforcement arrived.  *Id.* at ¶ 12.  Patterson was indicted on multiple counts, four of which related to the events at the apartment—involuntary manslaughter predicated on corrupting another with drugs or trafficking in heroin, two counts of corrupting another with drugs, and one count of trafficking in heroin.  *Id.* at ¶ 2-3, 74.  The jury found him not guilty of involuntary manslaughter but guilty of reckless homicide as a lesser included offense, and the jury

found him guilty of the corrupting another with drugs and trafficking counts. *Id.* at ¶ 35. The trial court merged the corrupting another with drugs counts. *Id.* at ¶ 36.

**{¶25}** On appeal, Patterson asserted that the trial court erred by not merging all counts related to the events at the apartment. *See id.* at ¶ 65. The appellate court disagreed. *See id.* at ¶ 79. Relevant here, the appellate court concluded that the "conviction for Reckless Homicide is evidenced by distinct conduct and animus." *Id.* at ¶ 75. The court explained that "[t]o commit Reckless Homicide, the offender must 'recklessly cause the death of another.' " *Id.* at ¶ 74, quoting R.C. 2903.041. It was "possible to base a conviction for Reckless Homicide on conduct constituting Corrupting Another with Drugs/Trafficking in Heroin." *Id.* However, because the jury found Patterson guilty of the predicate felonies for the involuntary manslaughter charge but acquitted him of involuntary manslaughter, "the jury must have determined that Sheesley's death was not the proximate result of the conduct constituting Corrupting Another with Drugs/Trafficking in Heroin." *Id.* at ¶ 75, fn. 3. The appellate court explained that "the jury necessarily considered Patterson's conduct outside of the predicate offenses in finding him guilty of Reckless Homicide." *Id.* at ¶ 75. The court stated:

> After the sale of the heroin, Stevens, concerned about Sheesley's failure to regain consciousness, called Patterson back to the apartment. According to both Stevens and [another person at the scene], Patterson gave assurances that Sheesley would be fine, and so dissuaded them from seeking medical attention for Sheesley and contributed to her death. Patterson's return to the apartment after the sale of the heroin was completed constituted additional conduct with a separate animus, thus preventing the Reckless Homicide charge from merging with the Corrupting Another with Drugs and Trafficking in Heroin charges.

*Id.* at ¶ 75.

**{¶26}** This case is distinguishable from *Patterson*. In *Patterson*, the defendant's conduct in dissuading others from seeking medical attention for the victim could serve as the basis for the reckless homicide conviction because it only required proof that the defendant recklessly caused the death of another. *Id.* at ¶ 74. Here, Bontrager was not convicted of reckless homicide. He was convicted under Count II of involuntary manslaughter in violation of R.C. 2903.04(A), which prohibits causing the unlawful termination of another's pregnancy as a proximate result of committing or attempting to commit a felony. The conduct of committing or attempting to commit a predicate felony is an element of the offense. As we previously explained, the state could not rely on Bontrager's failure to secure medical attention to prove Count II because that conduct is outside of the predicate offenses set forth in the indictment.

**{¶27}** The state's reliance on *Jones* and *Estes* is also misplaced. In *Jones*, the defendant sought merger of two counts of felonious assault in violation of R.C. 2903.11 but the appellate court found the acts from which each count arose were "separated by both a time interval and by distance." *Jones*, 11th Dist. Trumbull No. 92-T-4764, 1993 WL 548475, at *1, 4. In *Estes*, the defendant sought merger of one count each of tampering with evidence in violation of R.C. 2921.12(A)(1), gross abuse of a corpse in violation of R.C. 2927.01(B), and aggravated arson in violation of R.C. 2909.02(A)(2). *Estes*, 12th Dist. Preble No. CA2013-04-001, 2014-Ohio-767, ¶ 7, 12. The appellate court concluded that the offenses were not committed with the same conduct, *id.* at ¶ 20, in part due to the time which elapsed between acts on which the convictions were based, *id.* at ¶ 22. However, *Jones* and *Estes* did not involve any offenses with a predicate

offense. *See Jones* at *4; *Estes* at ¶ 12. Therefore, that fact did not limit the conduct which the state could use to prove any of the offenses as it does in this case.

**{¶28}** For the foregoing reasons, we conclude that Counts II and III are allied offenses of similar import and that the trial court erred when it did not merge them.

### D. Count V and Counts I-IV

**{¶29}** Bontrager maintains that the trial court erred by not merging Count V with Counts I, II, III, and IV. [2] Bontrager asserts that he trafficked in drugs when he gave Burton fentanyl and that that was the "precise moment" when he committed the corrupting another with drugs and involuntary manslaughter offenses.

**{¶30}** The trial court correctly refused to merge Count V with Counts I, II, III, and IV because Count V is of dissimilar import to the other offenses. Burton is the victim of Counts I and IV, which relate to her suffering serious physical harm and death. As previously explained, Burton's unborn child is the victim of Counts II and III, and the victim of Count V is society in general. Because Count V has a different victim than the other counts, Count V does not merge with them.

### E. Conclusion

**{¶31}** The trial court erred when it refused to merge Counts II and III and when it refused to merge Counts V and VI. However, the trial court correctly refused to merge Count V with Counts I, II, III, and IV. Accordingly, we sustain in part and overrule in part the first assignment of error. We reverse Bontrager's convictions on Counts II and III and remand for a new sentencing hearing on those counts at which the state must elect which

---

[2] Bontrager did not explicitly ask the trial court to merge Count V with Counts I or II. However, such a request is implicit in his request for the court to merge Count V with Counts III and IV because Bontrager also argued that Counts I and IV merged and that Counts II and III merged.

allied offense it will pursue against Bontrager. We also reverse his convictions on Counts V and VI and remand for a new sentencing hearing on those counts at which the state must elect which allied offense it will pursue against Bontrager.

## IV. CONSECUTIVE PRISON TERMS

{¶32} In his second assignment of error, Bontrager contends that the trial court erred when it imposed consecutive prison terms for some offenses because the record does not support the imposition of consecutive sentences.

{¶33} The court ordered Bontrager to serve the term for Count II consecutive with the term for Count I and to serve the term for Count III consecutive with the terms for Counts I and II. However, we have already determined that we must reverse the convictions on Counts II and III and remand for resentencing on those counts because the trial court should have merged them. Therefore, there are no consecutive sentences for us to review at this time. Accordingly, the second assignment of error is moot, and we need not address it. App.R. 12(A)(1)(c).

## V. REAGAN TOKES LAW

{¶34} In his third assignment of error, Bontrager contends that the trial court erred by, over objection, sentencing him under the Reagan Tokes Law because it is unconstitutional.

{¶35} The Reagan Tokes Law encompasses four newly enacted statutes and amendments to 50 existing statutes. R.C. 2901.011. Relevant here, the Reagan Tokes Law requires that a court imposing a prison term under R.C. 2929.14(A)(1)(a) or (2)(a) for a first or second degree felony committed on or after March 22, 2019, impose a minimum prison term under that provision and a maximum prison term determined under

R.C. 2929.144(B). R.C. 2929.144(A) and (C). There is a presumption that the offender "shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier." R.C. 2967.271(B). A presumptive earned early release date is a date determined under procedures described in R.C. 2967.271(F) which allow the sentencing court to reduce the minimum prison term under certain circumstances. R.C. 2967.271(A)(2).

{¶36} R.C. 2967.271(C) states that the Ohio Department of Rehabilitation and Correction ("ODRC") may rebut the presumption in R.C. 2967.271(B) if it

determines, at a hearing, that one or more of the following applies:

(1)    Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:

(a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

If ODRC rebuts the presumption, it "may maintain the offender's incarceration" after the expiration of the minimum prison term or presumptive earned early release date for a

reasonable period of time, determined and specified by ODRC, which "shall not exceed the offender's maximum prison term."  R.C. 2967.271(D)(1).

**{¶37}** Bontrager asserts that the Reagan Tokes Law violates the separation of powers doctrine because it allows ODRC, an executive agency, to "extend a prison sentence" if it concludes an offender committed an unprosecuted violation of law while incarcerated. He claims this amounts to an exercise of judicial authority which the legislature cannot delegate to the executive branch, relying on *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000), to support his position.  Bontrager also asserts that the Reagan Tokes Law violates procedural due process because offenders have a liberty interest in being released on their presumptive release date, and the law allows ODRC to "extend a prison sentence when an offender commits a violation of law." He quotes *White v. Konteh*, 11th Dist. Trumbull No. 99-T-0020, 1999 WL 587976, *5 (Mar. 23, 1999), for the proposition that "[i]t is a fundamental tenet of due process that the decision to restrict an individual's freedom can only be made by a neutral magistrate, not by law enforcement officials whose primary purpose is to place offenders in jail."  As used in that case, the phrase "neutral magistrate" refers to "a duly elected or appointed judge of this state."  *White* at *5, fn. 2.

**{¶38}** The constitutionality of a statute presents a question of law we review de novo.  *Hayslip v. Hanshaw*, 2016-Ohio-3339, 54 N.E.3d 1272, ¶ 27 (4th Dist.).  "Statutes are presumed to be constitutional."  *State v. Noling*, 136 Ohio St.3d 163, 2013-Ohio-1764, 992 N.E.2d 1095, ¶ 25.  "A statute will be upheld unless the challenger meets the burden of establishing beyond a reasonable doubt that the statute is unconstitutional."  *Id.*

**{¶39}** "A party may challenge a statute as unconstitutional on its face or as applied to a particular set of facts." *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37. "A facial challenge to a statute is the most difficult to bring successfully because the challenger must establish that there exists no set of circumstances under which the statute would be valid. The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid." (Citation omitted.) *Id.* Moreover, R.C. 1.50 states: "If any provision of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable."

**{¶40}** Although Bontrager challenges the facial constitutionality of the Reagan Tokes Law in its entirety, his argument focuses on R.C. 2967.271(C) and (D). Bontrager has not yet served his minimum sentence and been subject to the application of the specific provisions of the Reagan Tokes Law he asserts make it unconstitutional. In prior decisions, this court "repeatedly held that the constitutionality of sentencing pursuant to the Reagan Tokes Law is not yet ripe because on direct appeal an appellant has yet to serve his or her minimum prison term, which is the first instance in which the department of corrections could take any action that affects the length of an appellant's incarceration." *State v. Meadows*, 4th Dist. Ross No. 20CA3734, 2022-Ohio-287, ¶ 44. However, in *State v. Maddox*, Slip Opinion No. 2022-Ohio-764, the Supreme Court of Ohio recently held that "a criminal defendant's challenge to the constitutionality of R.C. 2967.271 is ripe for review on the defendant's direct appeal of his or her conviction and prison sentence."

*Maddox* at ¶ 22. Therefore, we will address the merits of Bontrager's constitutional arguments.

**{¶41}** Bontrager has failed in his burden to establish beyond a reasonable doubt that the Reagan Tokes Law is unconstitutional because it violates the separation of powers doctrine. His reliance on *Bray* is misplaced. In that case, the Supreme Court of Ohio considered a facial challenge to the constitutionality of now repealed R.C. 2967.11, also known as the "bad-time statute." *Bray*, 89 Ohio St.3d at 134, 729 N.E.2d 359.

**{¶42}** Former R.C. 2967.11(B) stated:

> As part of a prisoner's sentence, the parole board may punish a violation committed by the prisoner by extending the prisoner's stated prison term for a period of fifteen, thirty, sixty, or ninety days in accordance with this section. * * * If a prisoner's stated term is extended under this section, the time by which it is so extended shall be referred to as "bad time."

A "violation" was defined as "an act that is a criminal offense under the law of this state or the United States, whether or not a person is prosecuted for the commission of the offense." Former R.C. 2967.11(A). "Other sections in [former] R.C. 2967.11 set forth the procedures to be followed to determine whether a 'violation,' a crime, [had] been committed." *Bray* at 135.

**{¶43}** *Bray* held that the bad-time statute violated the separation of powers doctrine and was therefore unconstitutional. *Id.* at 136. The court explained that "[i]n our constitutional scheme, the judicial power resides in the judicial branch," and "[t]he determination of guilt in a criminal matter and the sentencing of a defendant convicted of a crime are solely the province of the judiciary." *Id.* Provisions of the bad-time statute "enable[d] the executive branch to prosecute an inmate for a crime, to determine whether a crime [had] been committed, and to impose a sentence for that crime." *Id.* at 135. This

was "no less than the executive branch's acting as judge, prosecutor, and jury." *Id. Bray* explained that the bad-time statute "intrude[d] well beyond the defined role of the executive branch as set forth in our Constitution," *id.*, because [t]rying, convicting, and sentencing inmates for crimes committed while in prison is not an exercise of executive power," *id.* at 136.

**{¶44}** The Second District Court of Appeals has explained that *Bray* does not "compel the conclusion that the Reagan Tokes Law violates the separation of powers doctrine" because

> there is a significant distinction between the imposition of "bad time" as allowed by R.C. 2967.11 and the Reagan Tokes Law. R.C. 2967.11 authorized the parole board to sentence a defendant to an additional prison term beyond that which had been imposed by the trial court. In *Bray*, the defendant had served the entirety of the definite sentence imposed by the trial court; the parole board then tacked an additional prison term onto the defendant's sentence. In contrast, under Reagan Tokes, the executive branch cannot keep a defendant in prison beyond the maximum sentence imposed by the trial court. In short, Reagan Tokes does not allow the ODRC to lengthen a defendant's sentence beyond the maximum sentence imposed by the trial court.

*State v. Barnes*, 2d Dist. Montgomery No. 28613, 2020-Ohio-4150, ¶ 36. *Accord State v. Hacker*, 2020-Ohio-5048, 161 N.E.3d 112, ¶ 22 (3d Dist.), *appeal allowed in part by* 161 Ohio St.3d 1449, 2021-Ohio-534, 163 N.E.3d 585. *See also State v. Delvallie*, 2022-Ohio-470, ___ N.E.3d ___, ¶ 34-38 (8th Dist.) We agree with this reasoning and therefore reject Bontrager's argument that the Reagan Tokes Law violates the separation of powers doctrine.

**{¶45}** Bontrager has also failed in his burden to establish beyond a reasonable doubt that the Reagan Tokes Law is facially unconstitutional because it violates due process. The Due Process Clause in the Fourteenth Amendment to the United States

Constitution states: "No State shall * * * deprive any person of life, liberty, or property, without due process of law * * *." The Due Course of Law Clause in Article I, Section 16 of the Ohio Constitution provides: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." "The two clauses provide equivalent due process protections." *State v. Wheatley*, 2018-Ohio-464, 94 N.E.3d 578, ¶ 28 (4th Dist.), citing *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 15.

{¶46} "Although the concept is flexible, at its core, procedural due process under both the Ohio and United States Constitutions requires, at a minimum, an opportunity to be heard when the state seeks to infringe a protected liberty or property right." *State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, ¶ 8. "[T]he opportunity to be heard must occur at a meaningful time and in a meaningful manner." *Id.* "Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness." *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). The United States Supreme Court has " 'defined the category of infractions that violate "fundamental fairness" very narrowly' based on the recognition that, '[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.' " *Medina v. California*, 505 U.S. 437, 443, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992), quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). "The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites

undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order." *Id.*

**{¶47}** "A procedural due process analysis begins by examining 'whether there exists a liberty or property interest of which a person has been deprived.' " *Wheatley* at ¶ 31, quoting *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011). "If the person has been deprived of a protected liberty or property interest, the question becomes 'whether the procedures followed by the State were constitutionally sufficient.' " *Id.*, quoting *Swarthout* at 219.

**{¶48}** Even if we agreed that R.C. 2967.271(C) and (D) deprive offenders of a protected liberty interest, Bontrager's suggestion that due process requires that the sentencing court, rather than ODRC, conduct the R.C. 2967.271(C) hearing and make the decision whether to maintain the offender's incarceration is not well-taken. The Twelfth District Court of Appeals has rejected a similar due process argument, explaining:

> The hearings conducted by the ODRC under R.C. 2967.271(C) are analogous to parole revocation proceedings, probation revocation proceedings, and postrelease control violation hearings * * *. This is because, as noted by the state as part of its appellate brief, "[a]ll three situations concern whether a convicted felon has committed violations while under the control and supervision of the [ODRC]." Therefore, because due process does not require the sentencing court to conduct parole revocation proceedings, probation revocation proceedings, or postrelease control violation hearings, we likewise conclude that due process does not require the sentencing court to conduct a hearing under R.C. 2967.271(C) to determine whether the ODRC has rebutted the presumption set forth in R.C. 2967.271(B).

(Alterations sic.) *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, ¶ 17. *See also Barnes*, 2d Dist. Montgomery No. 28613, 2020-Ohio-4150, at ¶ 38, fn. 2 (observing that appellant's assertion that he had a due process right to have a judge determine whether to extend the presumed minimum prison term under the Reagan

Tokes Law, "though precluded by waiver, does not seem well founded" because "[t]he extension of a defendant's sentence beyond the presumptive minimum term is akin to the decision to grant or deny parole," and "[t]he parole decision in Ohio is an executive function that does not involve the judiciary"). We agree with this reasoning and therefore reject Bontrager's argument that the Reagan Tokes Law violates due process.

{¶49} Because Bontrager has failed in his burden to establish beyond a reasonable doubt that the Reagan Tokes Law is unconstitutional, we overrule his third assignment of error.

## VI. CONCLUSION

{¶50} We sustain in part and overrule in part the first assignment of error. The second assignment of error is moot, and we overrule the third assignment of error. We reverse Bontrager's convictions on Counts II and III, which are allied offenses of similar import. We also reverse Bontrager's convictions on Counts V and VI, which are allied offenses of similar import. We remand for a new sentencing hearing on Counts II, III, V, and VI at which the state must elect which allied offenses it will pursue against Bontrager. We affirm the trial court's judgment in all other respects.

JUDGMENT AFFIRMED IN PART
AND REVERSED IN PART.
CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED.  Appellant and appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the ADAMS COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
        Michael D. Hess, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**